UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
IN ADMIRALTY
Case Number 07-61162-CIV-MORENO

STATE NATIONAL INSURANCE COMPANY,

    Plaintiff,
vs.

ANZHELA EXPLORER LLC, a Washington
Limited Liability corporation, JEFF DORSEY and
MARK ROSANDICH,

    Defendants.
_____/

## PLAINTIFF'S DAUBERT MOTION TO LIMIT OR PRECLUDE THE TRIAL TESTIMONY OF BRAD SCHOENWALD

Comes now the Plaintiff State National Insurance Company by and through its undersigned counsel and makes and files this Daubert Motion to Limit or Preclude the Trial Testimony of Brad Schoenwald and in support thereof would show as follows:

1. Defendant has proffered Brad Schoenwald as an expert in this matter to testify as to vessel condition, cause of loss and seaworthiness of the vessel at the time of loss.

2. Mr. Schoenwald is an ex-Coast Guard Warrant Officer who claims expertise regarding vessel inspections. (*July 30, 2008 Deposition B. Schoenwald page 8*)

3. Mr. Schoenwald currently teaches at a high performance, hands on boat school and sells high performance parts. (*July 30, 2008 Deposition B. Schoenwald page 13*)

4. Mr. Schoenwald has never previously testified as an expert in any action. He has no engineering qualifications; he never attended a diesel school; he is not certified by any nationally recognized marine surveying organization he is not a member of member of the Society of Naval Architects and Marine Engineers or any other nationally recognized marine surveying organization and is not a surveyor. Mr. Schoenwald does not belong to any professional associations and holds no professional licenses. (*July 30, 2008 Deposition B. Schoenwald pages 12-13*)

5. Mr. Schoenwald has limited knowledge of diesel mechanics or vessel construction.

6. At deposition Schoenwald testified he spent two hours viewing the vessel post loss and interviewed one member of the crew. (*July 30, 2008 Deposition B. Schoenwald pages 27- 28*)

7. He did not maintain field notes of the inspection. (*July 30, 2008 Deposition B. Schoenwald page 23*) His file notes consist of a single piece of paper which he is unable to decipher or interpret. (*July 30, 2008 Deposition B. Schoenwald pages 24- 25*) He was unable to recall the source of certain information contained in the report. *(July 30, 2008 Deposition B. Schoenwald page75)*

8. Schoenwald's opinion was derived solely on his observations and personal experience without any objective testing or analysis which could be replicated or peer reviewed. *(July 30, 2008 Deposition B. Schoenwald page 35)*

9. Although Schoenwald expressed the opinion the cause of loss was an engine overheat which resulted in damage to the starboard flexible exhaust hose allowing the influx of water into the vessel. Schoenwald performed no testing of the vessel or its component parts to verify his theory. *(July 30, 2008 Deposition B. Schoenwald page 36)* He does not know what caused the overheat. *(July 30, 2008 Deposition B. Schoenwald pages 42-43)*

10. He did not check the piston rings for evidence of internal heat damage; he did not check the sea strainers for obstruction *(July 30, 2008 Deposition B. Schoenwald page 43);* he did not inspect the impeller on the raw water pump; *(July 30, 2008 Deposition B. Schoenwald page 43);* he did not test oil samples *(July 30, 2008 Deposition B. Schoenwald pages 50-51)* or perform any other diagnostic tests or forensic investigation to determine whether the engine itself overheated or was subject to external sources of heat.

11. Schoenwald was unable to date the damage he observed or determine when the engine overheated and/or whether it was operative at the time of the overheat. *(July 30, 2008 Deposition B. Schoenwald pages 41 -42)*

12. Schoenwald opines the aperture in the exhaust hose was the source of the water which caused the flooding of the vessel. However he has no information as to the size of the hole, the rate of entry of the water or the capacity of the bilge pumps to dewater the vessel. *(July 30, 2008 Deposition B. Schoenwald pages 78, 89)* Moreover, Schoenwald has never seen the hose let alone performed any inspection or testing of it. *(July 30, 2008 Deposition B. Schoenwald page 57)* Such information would not alter his opinion however as he had already reached his conclusions without testing the

      physical evidence or statements of the crew. *(July 30, 2008 Deposition B. Schoenwald pages 109,113)*

13. Schoenwald was unaware of the vessel's prior history and if its casualty history was the basis for conditions he saw such as the discoloration of the bulkheads or other evidence of an overheat (which he attributes to an overheat). He concedes that prior casualties may have produced the conditions he observed but did not factor that into his opinions or conclusions. *(July 30, 2008 Deposition B. Schoenwald pages 37- 38)*

14. Schoenwald's testimony will not assist the trier of fact, but will only mislead the Court by allowing testimony that is incompetent, unsubstantiated and the prejudicial effect of which is substantially outweighed by any probative value it may have.

15. Schoenwald's limited experience is inadequate to qualify him as an expert in this action. He does not possess the training or skill required to opine with authority or competency as to the topics for which he has been proffered as required under Rule 702 or Rule 703 of The Federal Rules of Evidence.

16. It is clear the use of Schoenwald and his opinions will not assist the trier of fact and should not be admitted. His opinions are not based on the evidence, he testified he reached an opinion and then expected the physical evidence he had not seen or examined to support the opinion. *(July 30, 2008 Deposition B. Schoenwald page 58)* Indeed his opinions were and continue to be formed without examination of the hose that is the alleged source of flooding, regardless of the history of the boat or the crew statements. *(July 30, 2008 Deposition B. Schoenwald pages 65, 113,118)*

17. As such, Schoenwald should be stricken as an expert witness. He should not be allowed to testify at trial and his report should be excluded from evidence as irrelevant and misleading. His opinions are not based upon any physical evidence. In fact the witness could not identify any physical evidence to support his theory the supposed hole in the hose above the waterline was sufficient to cause the sinking. Nor could the witness document an overheat of the engine as the cause of the supposed hole.

**Wherefore**, Defendant prays this Court enter an order in limine precluding Schoenwald from providing expert testimony at trial and striking his reports together with such other and further relief as may be just and proper

### MEMORANDUM OF LAW

Case Number 07-61162-CIV-MORENO

A federal district court's authority to manage trials includes the power to exclude evidence pursuant to Motions in Limine. See *Alexander v. Mount Sinai Hospital Medical Center of Chicago*, 2005 U.S. Dist. LEXIS 536 (N.D. Ill. Jan. 14, 2005), The purpose of a Motion in Limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence, See *Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984)(noting that, although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials). The Motion in Limine is designed to prevent the introduction of immaterial matters, *Dailey v. Multicon Development, Inc.*, 417 So.2d 1106 (Fla. 4th DCA 1982), and to exclude evidence when its probative value is outweighed by the danger of unfair prejudice. *Adkins v. Seaboard Coast Line Railroad Co.*, 352 So. 2d 1088 (Fla. 2d DCA 1977).

In *Daubert*, the Supreme Court held that Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to 'insure' that an experts testimony is based on a reliable foundation and is relevant to the task at hand. *Daubert, Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 125 L.Ed. 2d 469 (1993), See also *Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167 (1999). The *Daubert* gate-keeping obligation applies not only to scientific testimony, but to all expert testimony. The Court in *Daubert* pointed out that Federal Rules of Evidence 702 and 703 grant expert witnesses testimonial latitude unavailable to other witnesses on the "assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline. *Kumho Tire*, 119 S.Ct. at 1174 (citing *Daubert*, 509 U.S. at 592).

Accordingly, although *Daubert* concerned the extent of "scientific" testimony, some of the factors set forth in *Daubert* can help evaluate the reliability of experience-based testimony for non scientific experts such as Schoenwald. *Kumho Tire* at 1175 *Daubert's* gate-keeping requirement is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Id.* at 1176. Therefore, the trial judge must have considerable leeway in deciding in a particular case, whether particular expert testimony is reliable, and therefore whether such testimony should be excluded.

In evaluating the admissibility of expert testimony, trial courts must consider whether (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through

4

the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *United States v, Abreu,* 406 F.3d 1304, 1306 (11th Cir. 2005). Applying these criteria it is clear that Schoenwald is not qualified to present expert opinions in this case.

**A. Schoenwald is Not Qualified To Testify Competently Regarding The Matters He Intends To Address**

A party may employ an expert witness with specialized knowledge or experience to help the trier of fact understand complicated issues and materials. F.R.E. 702. However, if the witnesses testimony does not meet these criteria it is not admissible. Rule 702 of the Federal Rules of Evidence states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Thus, to testify as an expert, a witness must qualify as an expert by knowledge, skill, experience, training, or otherwise. *F.R.E. 702; Weinstein's Federal Evidence*, §702.06(1) (1998). The opinion of an expert is given high regard because the expert's knowledge or experience in regard to the relevant issues lies outside the knowledge of the average lay person. Weinstein, §702,03 (1); *United States v. Rouco,* 765 F.2d 983 (11th Cir. 1995). For this reason, it is important that the opinion proffered by an expert witness be reliable. *Daubert v. Merrill Dow Pharmaceuticals*, Inc., 509 U.S. 597 (1993).

An expert's proffered testimony will be excluded if the subject matter is beyond the expertise of the person testifying. *Rosado v. Deters*, 5 F.3rd 119, 124 (5th Cir. 1993). The determination of a witnesses qualification as an expert is made on a case by case basis . *F.R.E. 104*. The fact that a witness may be considered an expert for one area does not mean that he is qualified to testify as an expert in the area proffered or the case before the court. The court should look at two factors in determining whether an individual qualifies as an expert in a particular subject matter: (a) Actual experience of the witness; and (b) the probative value of the witness' opinion. *Hughes v. Hemmingway*, 539 F.Sup. 130, 133 (E.D. Pa. 1982) (excluding opinion of expert because individual had limited experience in training in truck driving) (citing *Jenkins v. United States*, 307 F.2d 637 (D.C. Cir. 1962)). Accordingly, a witness cannot render an opinion outside the confines of his expertise.

A formal education or specific degree or title is not dispositive of whether a witness qualifies as an expert. Weinstein, §702.07(4); *Daubert,* supra.; *Kumho Tire*, supra. Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. The Advisory Committee Notes to the 2000 Amendment also make clear that 'experience alone--or experience in conjunction with other knowledge, skill, training, or education" may be a sufficient basis for expert testimony. The notes go on to explain that in certain areas, experience is the primary, if not the only, basis for reliable expert testimony. The *Kumho Tire* Court extended *Daubert* in holding that the criteria used to assess the reliability of a scientific opinion should be used to evaluate the reliability of all testimony, including that which is non-scientific or otherwise specialized. *R.K. v. Kanaskie,* 2007 U.S. Dist. LEXIS 50361 (S.D. Fla. 2007).

A person may qualify as an expert on the basis of skill or practical experience rather than education or training. Weinstein, §702.07(4); *Daubert*, supra; *Kumho Tire*, supra. However, neither is the circumstance before the Court. In the instant case, Schoenwald's knowledge and experience is insufficient to qualify him as an expert.

Schoenwald admittedly does not posses the requisite knowledge, skill, experience or training to qualify as an expert in this case. He has limited knowledge of diesel mechanics or vessel construction and no engineering qualifications; he never attended a diesel school; he is not a member of any nationally recognized marine surveying organization and is not a surveyor and does not belong to any professional associations. His knowledge as to vessel machinery or engines and systems is not beyond the ken of the average layman. He has no specialized training, experience or skills which would qualify him as an expert capable of offering testimony as to the cause of loss of the vessel or its seaworthiness.

Schoenwald is being called on to testify regarding opinions that are beyond the expertise of his skill and knowledge. If not stricken as an expert, the Court will allow unreliable opinions to reach the trier of fact and severely prejudice this litigation.

**B. Schoenwald's Conclusions are Not Sufficiently Reliable to be Admitted Under Daubert**

The second criterion for admitting expert testimony is that the methodology by which the expert reaches his conclusions is sufficiently reliable to be accepted by the Court. *United States v, Abreu,* 406 F.3d 1304, 1306 (11th Cir. 2005). In order to "assess the reliability of an expert opinion, the court considers a number of factors, including those listed by the Supreme Court in *Daubert*:

    (1)    whether the expert's theory can be and has been tested;
    (2)    whether the theory has been subjected to peer review and publication;

>   (3)  the known or potential rate of error of the particular scientific technique; and
>   (4)  whether the technique is generally accepted in the scientific community,"

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

Schoenwald plainly fails each prong of *Abreu* and therefore does not pass *Daubert* muster. Schoenwald's conclusions and theory have not been and can not be tested. His theory has not been subject to peer review and he does not rely upon any accepted theories or peer reviewed theories or processes in reaching his conclusions.

The court must "make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts at issue." <u>Dale v. General Motors Corp</u>., 109 F.Supp.2d 1376 (N.D.Ga. 1999) citing <u>Daubert</u>, 509 U.S. at 593, 113 S.Ct. 2786. If the reasoning or methodology is inapplicable for the facts at hand, the expert should not be allowed to testify.

In this instance not only was the expert's methodology unreliable, there was no methodology followed. Schoenwald did not employ any accepted techniques in reaching his conclusions. He did not employ any forensic or quantitative testing to test or support his conclusions. He never examined the hose in which the alleged hole was located. He does not know the size of the hole or the rate of water entering the hole. Further the witness opined the engine overheated as a cause of the supposed hole but did not examine any physical evidence that would establish the overheat on the night of the loss as the cause of the hole. In fact the witness can't testify to the timing of the overheart.  His testimony y is sheer speculation.

The crux of the Court's analysis is evaluating the "relevance and reliability" of the scientific evidence. See *Daubert*, 509 U.S. at 595. "The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." Id. The party that proffers expert testimony bears the burden of establishing admissibility by a preponderance of the evidence. *Allison v. McGhan Med. Corp*., 184 F.3d 1300 (11th Cir. 1999). An expert's testimony and opinions should be excluded if the reasoning or methodology which forms the basis of the opinion is scientifically invalid, or if the methodology cannot be applied to the facts of the case. *Club Car, Inc. v. Club Car (Quebec) Imp,, Inc.*,362 F.3d 775 (11th Cir. 2004). Schoenwald's methodology is not reliable, his processes are flawed and his opinion cannot be accepted by the Court.

**C. Third, Schoenwald possesses no specialized expertise so as to opine in such a way that will assist the trier of fact, through the application of scientific, technical, or specialized expertise.**

The third criterion for admission of an experts testimony under *United States v, Abreu,* 406 F.3d 1304, 1306 (11th Cir. 2005) is that the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. Schoenwald's proffered testimony fails in this respect as well. His opinions and determinations are based on an inspection of the vessel and interview of Killingsworth. He also reviewed the statements of the other two crew members. The conclusions and opinions he has reached are not predicated on science or scientific information, training or application of engineering principles, they are based merely his own say so. As such they are unreliable and inadmissible. Indeed they are not truly expert conclusion as contemplated by Daubert and its progeny but are "mere *ipse dixit,* unsupported subjective opinions grounded in speculation rather than science." *Fisher v. Ciba Specialty Chemicals Corp.* 2007 WL 2302470, 5 (S.D.Ala.) (S.D.Ala.,2007).

This Court consistently holds that the "opinions of an expert will not be accepted if based on merely the ipse dixit of the expert." *Brown v. Bray & Gillespie III Management LLC* 2008 WL 2397601, 6 (M.D.Fla.) (M.D.Fla.,2008). Such opinions are rejected because an"expert who supplies nothing but a bottom line supplies nothing of value to the judicial process. *Mid-State Fertilizer Co. v. Exchange National Bank,* 877 F.2d 1333, 1339 (7th Cir.1989). See also, e.g., *Djedovic v. Gonzales,* 441 F.3d 547 (7th Cir.2006); *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.,* 395 F.3d 416 (7th Cir.2005)."*Wendler & Ezra, P.C. v. American Intern. Group, Inc.* 521 F.3d 790, 791 (C.A.7 (Ill.), 2008) Schoenwald's opinion, simply put is since there was a hole in the hose (which he never examined) and the boat ultimately sank, the hole must have been the cause the water intrusion which caused the sinking.  In reaching this opinion however Schoenwald failed to assess or rule out other potential causes or sources of water intrusion. This blind leap of fact unsupported by physical evidence based merely on the say so of the expert is incompetent and inadmissible.

The Court will be presented with the actual testimony of the crew and their statements. The Court does not need Schoenwald to interpret this testimony or evaluate it. The Court will also be presented with pictorial evidence of the condition of the vessel as well as testimony of qualified marine surveyors who inspected the vessel after the loss and can provide evidence of its condition as well as marine engineers who will be able to testify as to the mechanism of loss.

Case Number 07-61162-CIV-MORENO

Given the availability of this evidence at trial the court will not need nor be aided by the assistance or testimony of Schoenwald as to matters in which he lacks training, expertise or experience.

 **Conclusion**

Where a *Daubert* challenge is made to an expert proffered by one of the parties, the trial court must "conduct an exacting analysis of the proffered expert's methodology." The proponent of the evidence must show that the purported expert was "qualified to testify competently regarding the matters he intend [s] to address; [that] the methodology by which the expert reaches his conclusions is sufficiently reliable; and [that] the testimony assists the trier of fact through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue."  *Maiz v. Virani,* 253 F.3d 641, 664 (11th Cir. 2001). Schoenwald's expert conclusions were developed solely for the case at hand, had never been peer-reviewed, and his conclusions are not generally accepted.  The generalized, self proclaiming approach he utilized in reaching his conclusions and then seeing if the evidence fit (or not examining the evidence at all as in the case with the hose) was not a methodology or process that lends itself to a finding of reliability. To permit the trier of fact to rely on Schoenwald's unqualified opinion is to embrace a liberal position essentially eviscerating the Court's gate keeping function under *Daubert*.  In light thereof Defendant's motion to strike the testimony and opinion's of Schoenwald at trial and from evidence altogether should be granted.

Respectfully submitted,
FERTIG & GRAMLING

By: s *Christopher R Fertig*
Christopher R. Fertig
Fla. Bar No: 218421
chris.fertig@fertig.com
Darlene M Lidondici
Fla. Bar No.: 516521
dml@fertig.com
Fertig & Gramling
Attorneys for Plaintiff
200 SE 13th Street
Fort Lauderdale, FL 33316
Telephone: 954-763-5020
Facsimile: 954-763-5412

Case Number 07-61162-CIV-MORENO

CERTIFICATE OF SERVICE

We hereby certify that on August  , 2008, we electronically filed the foregoing documents with the Clerk of the Court using CM/ECF. We also certify that the foregoing document is being served this day on all counsel of record identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

> FERTIG & GRAMLING
> Attorney for Plaintiff
> 200 SE 13th Street
> Fort Lauderdale, FL 33316
> Telephone: 954-763-5020
> Facsimile: 954-763-5412
>
> By: s/ *Darlene M Lidondici*
> Fla. Bar No.: 516521
> dml@fertig.com

Case Number 07-61162-CIV-MORENO

SERVICE LIST

Donald W. Strader, Esq.
Law Office of Donald W. Strader
8522 S.W. 82 Terrace
Miami, FL 33143-6663
Tel: 305-274-6881
Fax: 305-274-8786
email: dstrader@bellsouth.net
Attorney for Defendant Anzhela Explorer LLC

Charles P. Moure, Esq.
Harris & Moure, PLLC
600 Stewart Street, Suite 12(N)
Seattle, WA 98101
Phone: 206-224-5657
Fax: 206-224-5659
email: charles@harrismoure.com

Richard Cochran
Fowler, White, et al.
Espirito Santo Plaza
1395 Brickell Avenue, 14th Floor
Miami, FL 33131
email:rcochran@fowler-white.com
Attorney for WFT, non-party